## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DEVIN KAEMMERER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-CV-856-SMY-DGW** |
| | ) | |
| **CARGILL INCORPORATED and** | ) | |
| **BCBSM, INC., d/b/a BLUECROSS and** | ) | |
| **BLUESHIELD OF MINNESOTA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**YANDLE, District Judge:**

Plaintiff Devin Kaemmerer brings this ERISA action against Defendants Cargill Incorporated ("Cargill") and BCBSM, Inc., d/b/a BlueCross and BlueShield of Minnesota ("BCBSM") pursuant to 29 U.S.C. § 1132(a)(1)(B) alleging denial of health plan benefits. Before the Court are the parties' cross-motions for summary judgment (Docs. 23 and 25). The Court has carefully considered the briefs and evidence submitted by the parties and, for the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED** (Doc. 23) and Defendants' Motion for Summary Judgment is **GRANTED** (Doc. 25).

## BACKGROUND

Plaintiff is a participant in Cargill's Medical Plan (Doc. 21-5, pp. 111-112). BCBSM is the Plan's claims administrator (Doc. 21-3, p. 16). Under the Plan, BCBSM has final authority regarding claim determinations (Doc. 21-5, pp. 109-110). If BCBSM determines a claimant does not have a covered expense or the benefit is not covered, no benefits are payable under the Plan. (Doc. 21-4, p. 90). BCBSM's decisions are binding (Doc. 21-5, p. 109).

Under the Plan, medically necessary[1] spinal fusions are covered following prior authorization from BCBSM (Doc. 21-4, p. 76, p. 84).

On July 18, 2014, Plaintiff saw his primary care physician, Dr. Todd Vonderheide, for complaints of continued back pain radiating down his right leg (Doc. 21-9, p. 326).   Dr. Vonderheide referred Plaintiff to Dr. Thomas Lee, an orthopedic surgeon, for surgical consultation.  *Id*. at 327.  On August 5, 2014, Plaintiff was evaluated by a nurse practitioner in Dr. Lee's office as part of a surgical consultation (Doc. 21-9, pp. 319-320).  Plaintiff's chief complaints were low back pain and numbness radiating into his right leg down to his toes.  *Id*.  Plaintiff felt that the symptoms, present for approximately one year, were getting progressively worse.  *Id*.  X-rays taken that day showed Plaintiff had spondylolisthesis at L4-L5 and a fusion at L5-S1.  *Id*.  The recorded Oswestry Disability Index ("ODI"), a form of functional assessment, was 24%.  *Id*.  The office note also stated Plaintiff would follow up with Dr. Lee after obtaining a full-length standing x-ray (Doc. 21-9, p. 320).  The  x-ray,  taken  on August 30, 2014, showed  mild  scoliosis  and  spondylosis  with  a transitional vertebrae at L5-S1 (Doc. 21-9, pp. 321-322).

Dr. Lee examined Plaintiff on September 8, 2014 (Doc. 21-9, p. 318).   During the examination, Plaintiff complained of low back pain, right lower extremity symptoms and that he was unable to perform daily activities.  *Id*.  Dr. Lee reviewed prior x-rays and two 2013 MRIs.

---

[1] The Plan defines "medically necessary" as "health care services that a physician, exercising  prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are: (a) in accordance with generally accepted standards of medical practice; (b) clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness. injury or disease; and (c) not primarily for the convenience of the patient, physician, or other health care provider, and not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease…"

*Id.* The September 2013 MRI showed a mild disc dislocation at L4-L5 with minimum diffuse disc bulge, a tiny midline disc protrusion, with mild spinal canal stenosis (Doc. 21-7, p. 247). Dr. Lee opined that Plaintiff had L4-L5 spondylolisthesis, L3-L4/L4-L5 protrusions with spinal stenosis (Doc. 21-9, p. 320). Dr. Lee noted Plaintiff only had a small coronal Cobb (Doc. 21-10, p. 356). After reviewing his options, Plaintiff decided to proceed with surgery. *Id.*

On November 5, 2014, Dr. Lee submitted a prior authorization request to BCBSM for Plaintiff's spinal fusion surgery (Doc. 21-9, pp. 316-332). The authorization included office notes, x-rays from March 2013 and August 2015, the September 2013 MRI report, and operative reports for epidural injections and radiofrequency denervation. *Id.* On November 19, 2014, BCBSM denied the request as not medically necessary (Doc. 21-9, p. 334). The rationale provided was that Plaintiff's documentation did not meet the criteria listed in the Spinal Fusion: Lumbar, Policy IV-87 (the "Policy") (Doc. 21-9, pp. 340-343). Specifically, Plaintiff did not submit physical therapy records, ODI scores from the first and last physical therapy sessions, or documentation from a physical therapist that he was unable to complete a three month course of therapy due to progressively worsening pain and disability. *Id.*

The Policy lists four categories regarding when a lumbar fusion may be medically necessary (Doc. 21-7, pp. 246-250, Doc. 21-8, pp. 251-253). Pursuant to the Policy, documentation supporting the categories must be included in the prior authorization, including: (1) documented completion of physical therapy or, if unable to complete the required physical therapy, documentation from a physical therapist describing the patient's inability to complete physical therapy; (2) functional assessment measured by the ODI demonstrating less than 30% improvement in ODI score between the first and last physical therapy session or continued ODI

score of greater than or equal to 40% at the conclusion of physical therapy; (3) documentation from a primary care physician or mental health professional showing absence of untreated, underlying, contributory mental health condition; and (4) written report from a radiologist describing findings from spinal diagnostic imaging that demonstrate one of seven conditions, such as scoliotic curve of greater than 50 degrees, spinal instability, spinal cord compression, or degenerative disc disease limited to 1 to 2 levels (Doc. 21-7, pp. 229-231, pp. 249-250).

On December 23, 2014, Dr. Lee referred Plaintiff to a physical therapist (Doc. 21-9, p. 347).  Plaintiff completed six physical therapy sessions between December 23, 2014, and January 16, 2015 (Doc. 21-11, p. 418).  On January 23, 2015, Dr. Lee submitted a second prior authorization, which BCBSM considered an appeal of the original prior authorization (Doc. 21-9, pp. 346-374).  The appeal included physical therapy records from the six sessions completed by Plaintiff (Doc. 21-9, pp. 347-353).

BCBSM consulted with a peer-reviewer, a board-certified orthopedic surgeon, who determined Plaintiff did not meet the Plan's required criteria for coverage under the Policy (Doc. 21-11, pp. 430-431).  Specifically, Plaintiff did not fulfill the Policy's Part IV criteria for chronic discogenic back pain nor had Plaintiff completed the requisite number of physical therapy sessions (Doc. 21-11, p. 431).  Further, the documentation did not include physical therapy records for the three prior months, ODI scores, a psychological evaluation, or recent imaging study.  *Id*.  On February 9, 2015, BCBSM denied Plaintiff's appeal.  *Id.*  In the denial letter, BCBSM explained the reasons for the denial and advised Plaintiff that if he had information to provide regarding the appeal, to contact the BCBSM liaison directly within 10 calendar days (Doc. 29-12, p. 480).  A BCBSM representative spoke to Plaintiff by telephone and identified the missing documentation that BCBSM needed to consider Plaintiff's coverage request (Doc. 21-

12, pp. 471-477).  Plaintiff did not submit any additional documentation within the 10 days.  On February 20, 2015, BCBSM sent a final appeal decision letter to Plaintiff denying coverage (Doc. 21-12, pp. 485-488).  BCBSM advised Plaintiff that he could appeal to BCBSM's Corporate Appeal Committee within 60 days or request an external review that would make an independent decision about his appeal.  *Id.*

On May 6, 2015, Plaintiff requested an external review (Doc. 21-12 p. 490).  Plaintiff submitted additional documentation to the external reviewer, including: (1) an opinion letter from Dr. Vonderheide stating Plaintiff had no untreated or underlying mental condition, depression, alcohol or drug abuse; and (2) an opinion letter from his physical therapist stating that Plaintiff was seen for a total of six therapy sessions between December 23, 2014, and January 16, 2015 and that he scored a 60% impairment rating on February 27, 2015, and could not complete physical therapy because of pain and paresthesia (Doc. 21-13, pp. 521-522).  On June 23, 2015, the external reviewer determined that Plaintiff's requested lumbar fusion was not medically necessary (Doc. 21-13, p. 548).  The reviewer opined that fusing the lumbar spine in the absence of instability for multiple levels was not consistent with the standards of good medical practice in the United States.  *Id.* at 549.

## DISCUSSION

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); s*ee also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).  The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party.  *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).  Cross-motions for summary judgment do not automatically mean that all

questions of material fact have been resolved. *Franklin v. City of Evanston,* 384 F.3d 838, 842 (7th Cir.2004). The Court must evaluate each motion independently, making all reasonable inferences in favor of the nonmoving party with respect to each motion. *Id.* at 483. Here, the parties do not dispute the material facts which are contained in the administrative record (*see* Doc. 21). Further, the parties agree that the Court should review BCBSM's decision under a deferential "arbitrary and capricious' standard (*see* Docs. 23, 25). Accordingly, the Court evaluates the merits of both motions collectively.

Under ERISA's civil enforcement provision, § 1132(a)(1)(B), judicial review of a plan administrator's benefits determination is *de novo* unless the plan grants discretionary authority to the administrator. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where a qualifying plan gives the administrator discretionary authority to determine eligibility for benefits, the court shall review the administrator's decision to deny benefits under the arbitrary and capricious standard. *Mote v. Aetna Life Ins.* Co., 502 F.3d 601, 606 (7th Cir. 2007); *Hackett v. Xerox Corp.,* 315 F.3d 771, 773 (7th Cir. 2003). To determine whether a plan administrator has discretionary authority, the court looks to the plain language of the plan. *Postma v. Paul Revere Life Ins. Co.,* 223 F.3d 533, 538 (7th Cir. 2000).

In this case, the Court reviews the decision regarding benefits under the arbitrary and capricious standard as the parties agree that the Plan provides for discretionary authority. Under the arbitrary and capricious standard the Court may overturn an administrator's decision only if the decision is "downright unreasonable." *Mote,* 502 F.3d at 606. This standard is deferential, but it is not a "rubber stamp," as the Court will not uphold a denial of benefits if the plan administrator fails to articulate specific reasons for rejecting evidence and denying the claim. *Black v. Long Term Disability,* 582 F.3d 738, 745 (7th Cir. 2009) (citing *Williams v. Aetna Life*

*Ins. Co.,* 509 F.3d 317, 324 (7th Cir. 2007)).  The court's ultimate goal is to ensure that the plan administrator's decision has rational support in the record.  *See Speciale v. Blue Cross & Blue Shield Ass'n,* 538 F.3d 615, 621 (7th Cir. 2008).  In making this determination, the Court must focus on the evidence before the administrator at the time of the final decision.  *Majeski v. Metropolitan Life Insurance Co.,* 590 F.3d 478, 483 (7th Cir.2009); *Brown v. Retirement Committee of Briggs & Stratton Retirement Plan,* 797 F.2d 521, 532 (7th Cir.1986).  The administrator's determination will be upheld "as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem."  *Williams,* 509 F.3d at 321–22.

Plaintiff argues that the denial of his surgery for failing to provide the requisite documentation was arbitrary and capricious because Plaintiff eventually submitted the omitted documentation to the independent external reviewer.  Defendants counter that Plaintiff failed to submit documentation supporting the requested surgery despite several opportunities.  Defendants further assert that, based on the information available to it at the time, BCBSM reasonably determined that surgery was not medically necessary.

The Policy provided specific criteria to support the surgery and listed the essential documentation necessary for authorization.  There is no dispute that Plaintiff failed to provide the documentation required by the Policy.  Plaintiff does not deny that at the time of the November 2014 prior authorization and the January 2015 appeal, BCBSM did not have documentation establishing: (1) completion of physical therapy or the inability to complete the required physical therapy; (2) Plaintiff's functional assessment measured by ODI; (3) opinion of

Plaintiff's primary care physician or a mental health professional demonstrating an absence of a contributory mental health condition; or (4) findings of a radiologist from spinal diagnostic imaging performed within 12 months of the prior authorization demonstrating that Plaintiff suffered from spinal instability, spinal cord compression or degenerative disc disease limited to 1 to 2 levels. Plaintiff's contention that he eventually submitted the requisite documentation for the May 2015 independent external review is unavailing. Only information that was timely before BCBSM at the time of its reviews may be utilized to demonstrate that BCBSM's decisions were unreasonable. *See Williams*, 509 F.3d at 321-324. Accordingly, the Court finds that it was reasonable - not arbitrary or capricious - for BCBSM to deny Plaintiff's fusion surgery based on Plaintiff's failure to comply with the straightforward documentation required by the Plan. *See Senkier v. Hartford Life & Accident Ins. Co.,* 948 F.2d 1050, 1053 (7th Cir.1991)(unambiguous provisions in ERISA plan documents must be interpreted in accordance with their plain meaning and enforced as written).

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied and Defendants' Motion for Summary Judgment is granted. This action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants Cargill Incorporated and BCBSM, Inc., d/b/a BlueCross and BlueShield of Minnesota and against Plaintiff Devin Kaemmerer.

**IT IS SO ORDERED.**

**DATED:  January 15, 2016**

s/ Staci M. Yandle
**STACI M. YANDLE**
**United States District Judge**